Good morning, your honors. May it please the court, Dale Ogden for Nathan Mason. I'll try to reserve two minutes of time for my rebuttal and I'll watch the clock. Mr. Mason repeatedly let counsel know, let the court know, and testified that he was innocent of these charges, that he was sober in his right mind, and that the victims were lying. After counsel had conceded otherwise, he even spoke up at closing, yelling, I'm innocent, before he was escorted out of the courtroom. He thus meets the first prong of McCoy, seeking to persist in his innocence. Based on the briefing, I think the second prong that counsel conceded guilt is where most of the dispute lies. So I'll turn there unless the court would like to direct me elsewhere. The core error in the state's position, I think, is this, is what conceding guilt means. Conceding guilt, as used in McCoy jurisprudence, means either implicitly or explicitly admitting factual guilt, the actus reus, or raising certain mental state defenses that the client has a right to prevent. That's McCoy and that's Reed. With that correct understanding of McCoy and Reed, that's what happened here. Mason is saying this did not happen. His attorney is saying, yes, threats were made, but when threats were made, he was not in his right mind. He was intoxicated, you know, to such a degree that he didn't understand his actions. And that's precisely the same, well, it's the same thing that happened in Reed. And it's the same justifications that really would prevent, would allow Mason to prevent his attorney from raising that over his objection. I think the magistrate judge really grappled with this and came close to this, to granting relief here in some ways. Because what she explains in the R&R is Mr. Mason and his counsel are clearly acting at cross purposes throughout trial. What she did was, the quote is, hardly a model of client-centered representation. That's correct. That's precisely the right that McCoy enshrines is the right to be the captain of the ship. The defendant is the captain of the ship. And we, as the attorneys, provide the assistance of counsel. And you don't act contrary to your client's wishes. Is that at every step? Can your client dictate every single step in the litigation? No. Most things are arguments. Right? And that's Gonzalez. Most things fall into the argument camp. But where we are here is conceding. What counsel can't do is concede guilt. You know, with the definition that I give. So I guess my confusion is, I understand that as a kind of big picture thing. But here, when counsel said, or potentially said, let me paraphrase, yeah, you know, maybe he did commit that. But he was so drunk he didn't know. And, therefore, he didn't have the proper mental state to be found guilty of that particular crime that required that enhanced mental state. Is that still the same thing? Is that still ‑‑ I mean, because aren't they, at the end of the day, trying to get the same acquittal, so to speak? So I'd push back a little on two things. One is what counsel was doing at closing. She does explicitly say when the threats were made, Mason had no clue what he was doing or saying. So I think the threat count is actually probably the most clear here that she is acknowledging threats were made. That's the actus reus of that offense. And the line is the same line that was drawn in McCoy, is you're not conceding factual guilt. Throughout McCoy, McCoy explains it's not just the technical acquittal. And in a case Chambers, this is a denial of cert dissent by Justice Sotomayor. But she explains, we made clear in McCoy that it's not just the technical acquittal. It's factual innocence. It's this didn't happen that we're concerned about. Because throughout McCoy, they described the right as avoiding the concession that Mr. McCoy killed his family. Not that he was guilty of first‑degree murder, that he did a killing, right? Well, McCoy's counsel, Mr. English, was doing was actually a pretty common defense. He's saying, yes, this act happened, but no, he lacked the requisite mental state. And the Supreme Court there is saying that's still a violation of the right. And the reason I cite all these state cases as well is in McCoy itself, the Supreme Court flags three state Supreme Court cases. And cites them favorably for the proposition that when you concede factual guilt in pursuit of a mental state defense, like lack of premeditation, those type of things, that still violates the right. So here's what I'm confused about. And it may be just my ignorance of the law. But so it seemed to me what Mason wanted to argue was a different version of the facts where what he was doing was acting in self‑defense. And so to ‑‑ he said he wasn't drunk, so he didn't ‑‑ he and his counsel were contradicting each other throughout this thing. But he wanted the self‑defense to be asserted as, as I understand the self‑defense argument, yeah, I did these things, but I did them in self‑defense. And they started this altercation. They came after me first. And then I had to shoot off the gun to protect myself. And ‑‑ but that's still admitting that some of the act is serious, right? Well, where I'd push back is what Mason wanted there. Because I think the self‑defense, as your Honor mentioned, it applies to the negligent discharge count, because that's where he's saying. Right, it's the various counts. Yeah, this is where it gets a little. Confusing. Right. So I probably should have done a better job of this in the AOB. All right. So it's the negligent discharge is what he's saying. That's where, you know, I shot it off to scare them off. They ran. That's where that one applies. For all the other counts, he is saying this did not happen, full stop. That they're lying. Yeah, he did not put a bullet through the door. He didn't assault them. He didn't make threats, that type of thing. So that applies to the other counts. But didn't counsel ‑‑ I'm sorry. Oh, I'm sorry. I'm just trying to remember what all the counts were. Can you give me an example of the count where the voluntary intoxication would come in as a defense? Well, it's an interesting question, because where counsel raises the voluntary intoxication is counts four and six. Okay. The threats and the negligent discharge count. Again, I think the threats count is pretty clear, because he's saying, you know, she's admitting the threats happened. For four, it's beyond me, because voluntary intoxication is not a defense to negligent discharge. So actually by raising that defense, she is admitting guilt, period, even under the state's pretty narrow definition. Much like McCoy, where English was raising a mental state defense that probably didn't exist under Louisiana law, she's raising a mental state defense that does not exist under California law as the count four, the negligent discharge. Counsel, I want to ask you a hypothetical, because it will help me understand your position and how we interpret McCoy. And the circuits are all over the place on this issue, as I think you've acknowledged. All right, so here's the hypothetical. It's a sexual assault case. And there is DNA evidence tying the defendant to the victim. And there's the victim's testimony, saying that they had sexual intercourse, but it was not voluntary. So it's a sexual assault case. The defendant tells his lawyer, I didn't have sex with her. I don't want you going up there and saying that I did, despite all the evidence to suggest that something happened. The defense counsel wants to argue that it was consensual. The defense counsel thinks that's the best way out of this case. And there's some evidence to support the idea it's consensual. In that situation, if defense counsel makes the consensual argument rather than the never happened argument, would that be a violation of McCoy in your view? So I think the answer to this is found in Justice Alito's dissent in this court's decision in Christian. The answer is if what counsel says, and Justice Alito actually compares these two situations. He says if what counsel did was admit to the act, admit to the sexual contact, and then say, but it was consensual, that's a problem. But if what counsel does is say, we don't know what happened, we weren't there, but whatever happened, here's the evidence that it would have been consensual, that is okay. And I understand that's a fine line sometimes, but that's the line that Feretta and McCoy have drawn is to the right, is you have a right not to admit to criminal acts, to the actus reus of an offense. There's a lot of good reasons why somebody might want to push back on the idea that there was sexual contact like that. So you can raise defenses like consent, but you can't acknowledge that the acts happened. So it's almost when there's that word autonomy I think is used in the opinion, which candidly, that can mean a lot of different things to a lot of different people. So your view of what that word means is like the defendant has his story, his story. He's allowed to tell his story, and the lawyer cannot contradict his story. Is that one way to look at this? I think that's probably a little bit broader than what I'm saying. It's not the story as a whole. It's the actus reus of an offense because when you admit to something like a killing or sexual contact or whatever, there's a right for the defendant to persist in his innocence there. There's a right to say I didn't do that. You can't concede that, and the lawyer can do any number of things at that point. The only thing she can't do is concede it. You can – the lawyer still gets – like we were talking about earlier, Your Honor. The lawyer still gets to focus which arguments they think are best or whatever, but in doing that, they just can't concede that it happened. So they can still argue reasonable doubt. These are all the typical things you're saying they can argue. Certainly, yeah. The whole world is still open to a defense attorney. Now, I mean there is – Before you move on, I'm sorry. I just want to clarify. Does that also extend to affirmative defenses? Can my client tell me – I want you to say that it was consensual in Judge Owens' example. That's a tough example because I don't know if that's an affirmative defense or if that's an element of the offense. But assuming it's affirmative, I think McCoy answers this the cleanest, and it's like, well, the Louisiana ethical rules might have prevented Mr. English from raising a frivolous defense or a defense he knows is false. But what he can't do is admit that it happened. So I think the answer is a client can not force an attorney to raise a defense, an affirmative defense, for which they know is false, right? That's the McCoy line. But on the flip side, there are a lot of cases that suggest if the attorney is raising an affirmative defense, the affirmative is probably a misnomer. It probably doesn't matter whether it's affirmative or not. But when a client is saying, don't do that, that's where McCoy kicks in and says, no, okay, you can't concede it. If the client says, don't argue self-defense, what the attorney would have to do to argue self-defense is get up there and say, yeah, he killed them, but it was in self-defense. You're going to create a McCoy problem when you raise that over a client's objection. And so when is it a McCoy issue versus when is it a Strickland issue, an ineffective assistance of counsel issue? They are distinct in almost every sense, right? McCoy is structural. Strickland has a convoluted prejudice standard, that type of thing. The line is in an autonomy, right, of the client. If it's not in that camp, yeah, everything else is going to be in the Strickland camp. The question is, is it the client's right under McCoy? Is it an autonomy right? And I think what, you know, McCoy and Reed stand for the proposition that we put forward that that's implicitly or explicitly admitting guilt or raising these defenses that a client has the right to prevent. I'm sorry, I'm well over my time. The court has no other questions. Oh, no, this is, it's, I mean, because the circuits are everywhere and people are struggling to interpret McCoy. It's, and apply it in this case to these facts. Both sides can have extra time. It's a very difficult question. So thank you. If I could, if I could address that, Your Honor. I don't think the court needs to wade into the circuit split either because obviously Walters, for example, conceding an element only is a McCoy violation. That is a split with the Second Circuit and Roseman, for example. But the consistent through line is conceding the actus reus. So, and here that you, she can, you're arguing the attorney conceded the actus reus because she said when the threats were made. Right, for that, for those, like, so acknowledging the threats were made. Yeah, for, yeah, again, the threats are, I think, the clearest ones for the, for the other counts. You know, it's sort of what the magistrate judge says is she's acknowledging that the victim story is correct. She's actively disagreeing with her own client. She doesn't ask for a not guilty. One of the oddest things is that he gets on the stand and testifies this is all a lie, and then the attorney comes on and says, no, this is what happened. That was just strange to me, reading this. I have the same intuition, and I think that intuition is the autonomy right for McCoy. Is that if your client gets up there, that's not, that's off, that's off limits in a way. You know, in addition to being obviously terrible strategy. So, perhaps a stricken thing by him. It could be both McCoy and circling. Oh, there's plenty of facts where it could be both. I do think this falls into the McCoy camp. All right. Thank you. Council. Thank you. Good morning. May it please the court. Gabriel Bradley for the respondent. McCoy prohibits a lawyer from making an actual concession of guilt over her clients express objection and the holding of McCoy goes no further than that. If a prisoner disagrees with this attorney's choice of defense strategy, that is a stricken claim. Not a McCoy claim. Likewise, if a prisoner believes his attorney should have been more aggressive in closing argument. That is a stricken claim and not a McCoy claim. However, stricken claim does test for prejudice and perhaps having to seeking to avoid having to test for prejudice. Mason attempts to frame his complaints about his attorney's performance as McCoy error, which would be structural error. McCoy is limited to the rare occurrence of an attorney overriding their clients express choice of the fundamental goal of the representation. And that only makes sense because that would be a structural error. But here, Mason got to choose the fundamental goal of his representation, which was to seek an acquittal at trial. And his attorney honored that choice by going to trial on his behalf and seeking an acquittal at all times throughout the proceedings. Their objectives were aligned. So what's interesting is that if you say, oh, they both have the objective of being acquittal, that's it's such a. General abstract level that you can say that in every case, everybody wants to be acquitted. But at what point can you can the defense attorney concede. Conduct as opposed to conduct in the goal of acquittal. Against the client's. Objections. For example, this attorney here said when the threats were made, do you agree that that was. Admitting or conceding or acknowledging that her client had made the threats. No, your honor, we don't acknowledge that that's what the attorney did here. The whole sentence in context is very equivocal in slang, which I would submit to you that I believe there's evidence to support a finding. That at the point in time when the threats were made, Mr. Mason had no clue what he was saying or doing. He'd been hit on the head, even drinking. So. The issue. Sure, that's the sentence I'm referring to. But let the only time when she makes the statement. OK, fine. So so she does. So what is permissible is to argue in the alternative to present different points of view and to argue that she's not saying that these things did happen. But she's saying, I, I believe that there's evidence that we're defining that. So I so we don't agree that she was conceding the threats happened. There was no testimony from Mr. Mason regarding whether he did or didn't make these statements. And so she doesn't really get into it very much in her statement. In her closing argument, what she does do is argue that because of the head trauma that he received and because of evidence showing that he may have been drinking, even though he disclaimed it in cross examination, that that was enough to support a finding that the men's realm had not been met here. So she's allowed to do that. She allowed to go after the element that she views in her professional judgment is weakest. The one that she believes she has the best chance of knocking down. That's a strategic call by an attorney. And she's well within her ambit to make that decision. That's not depriving him of his fundamental right to choose the fundamental objective representation. And that's where, yes, McCoy is at that big general sort of big picture issue because it's structural error. That's what we're talking about here is somebody who doesn't want to plead guilty, but instead wants to take this to trial and seek an acquittal. That person, if that decision he's made, it gets overridden by his attorney over his express objection. That is at that general level, structural error. And that's why McCoy treated it that way. I am sorry to interrupt, but that's the exact point I'm kind of stuck on. He specifically said several times I wasn't drunk. I wasn't drunk. I wasn't drunk. And then she goes up there and says maybe he was so drunk he didn't realize he was drunk. How is that not going against his express wish to not to say, hey, I didn't do it? Not just what she said, which he may have been so drunk he didn't realize he did it. So that happened later in the trial. And that's one of the things that is pointed out by both the majority and the dissent in McCoy is that things happen in trial and the attorneys be able to adapt. And so what happened here was she advised him not to testify. He chose to testify. That's fine. He got through his direct exam just fine. And then when he's being cross-examined, what happens is the unexpected happens on cross-examination. That's usually why you're not advised to testify. And when he was being cross-examined, the prosecutor gets into this issue of you didn't drink. And he goes along and cross-examination, he admits, yeah, you're right, I wasn't. So the attorney then says outside the presence of the jury to the judge when they're discussing instructions, I'm in a bad position because I came in with strategy A. And now he's gone into and thrown this out. That kind of thing happens in trial where the actions of the evidence or the client's choices, whatever it may be, turn out different than the attorney was anticipating. That's not him being deprived of his right to control his decision about whether to plead guilty or to seek an acquittal at trial. And that's not his attorney abandoning him. What that is is the attorney has to make a professional judgment about the best way to go forward. She said, I'll think about it over the weekend. When she came back, she tried to try and walk that tightrope of saying, well, there is evidence to support a finding. So that's why that's a equivocal language there. You see in the so she's doing the best of what she's got. But there's no Sixth Amendment requirement to take a salisier and turn it into a sealed purse. What she did was the best she could. Failure to come up with a better strategy that could be tested under Strickland to see if that's some sort of prejudicial error there. But it's not structural error. It's not him being overridden in the fundamental goal of representation by his own lawyer. Their objectives were aligned. They both wanted this jury to find him not guilty. He was doing what he felt was in his own best interest, and she was using her professional judgment to do the best she could with the facts of the case to try and win an acquittal for him. But the choice of one defense strategy over another and debates about the merits of a particular affirmative defense, that's not structural error. And a strategic choice to concede an element, that's not structural error either. Failure to be as aggressive as an attorney might want as a client might want his attorney to be, that's not structural error. So we're outside the realm of McCoy. We're talking about the things that Strickland is amply suited to deal with. So can we go back to the hypothetical I asked that you're opposing counsel because I want to get your take on this. Again, it's a sexual assault case. He insists that no sexual contact occurred, but there's DNA evidence and the victim's testimony suggesting that it did happen. In your view, can defense counsel go up there and argue it was consensual even though the defendant does not want counsel to admit any sexual contact? I agree that – so it's certainly no problem at all if he argues the – if the attorney argues the alternative and says they haven't proven that there was sexual contact, but even if they did, it was consensual. That avoids this problem of the client doesn't want to admit that. The problem with that, though, is it's not a persuasive argument, and it would lose credibility with the jury if you are asking them to completely ignore the DNA evidence and the confession. So it is a professional judgment within the attorney's ambit to say I know that's not a persuasive argument. I have a chance to get an acquittal here, which I know is your goal of representation. I'm going to get up in my closing argument, and I'm going to say, yes, the evidence shows that this happened, but here's all the things that support consent. That is a strategic choice that's based on professional judgment about what's going to be persuasive to a jury or not. That's exactly what an attorney is well-suited for. And it's clear from McCoy that an attorney cannot have their closing argument dictated to them by the client. So let me ask you about that because McCoy has – there's some language in there that's – for me, I have trouble understanding exactly what they were trying to accomplish. But in that situation, if the defendant says, look, this is really important to me for religious reasons that I don't ever concede that I had sexual contact with someone who's not my wife. I want to stay married, and if I concede I had sexual contact with someone else, I'm going to get divorced. These are really important things to me. In fact, those are more important to me than even this conviction. It's that important to me. Even still you would say under McCoy defense counsel could go against the defendant's wishes because the ultimate goal is acquittal. So the – those would all be reasons why the client may not want to testify and have to answer the questions about that. But as far as what the lawyer says in the lawyer's closing argument, because it's not – they're not saying that he – they're admitting that the strength of the government's evidence is such that it's not worth fighting that element. But we are going to fight on these other elements where we feel that there's a weakness in the government's case, specifically the consent in this situation. It's very similar to what happened here is there was a strength of the evidence about him being there shooting the gun. There was an uninvolved third-party witness who saw it. So it's a professional judgment for the attorney to say we can't win by going that way and fighting that part of the case. What we can do is we've got this low-hanging fruit here of the mens rea element, which I do think we have a shot at. We can knock that down, and that's where I'm going to focus my efforts. That's where I'm going to focus my energy because I know we're just spinning our wheels and losing credibility in front of the fact finder if we spend time on this other thing that's going to be a distraction. What about the negligent discharge count? Because that count, she conceded the negligent discharge, and she argued voluntary intoxication. But voluntary intoxication under California law is not a defense to negligent discharge because it's a general intent crime. So what about that one? Is that at least more clear for you? I note that my time has expired. Oh, do you not want to answer the question? No, I just want to be talking. I'm happy to answer the question. Okay, please. So I disagree with the characterization of the record. What she said, she starts to go down that road and then corrects herself. She says shooting in the air, shooting in a reckless manner, and then she herself says it's a general intent crime. And then she goes, she pivots to circumstantial evidence. It's circumstantial evidence that a person who later threatens someone has no clue what's going on and is drunk. And then she goes again to it's circumstantial evidence. So what the magistrate judge found in the report and recommendation was that the defense there had to do with sufficiency of the evidence, which is always an option to go after the sufficiency of the evidence, say the prosecution didn't meet their high burden of proof beyond reasonable doubt. And what the magistrate interpreted the record, and I agree with it, it's her. She wasn't trying to hang her hat on Mandrea because she admits herself. She catches herself saying it's a general intent crime. So she doesn't try and attack Mandrea for that one. She says it's circumstantial evidence. So she goes after did the prosecution meet their burden of proof beyond reasonable doubt. She says she doesn't concede any count. She says I'm not conceding anything. She said I'm not conceding anything else other than I want to talk about I want to focus on the mens rea of these two counts that have a higher mens rea requirement. And she does focus on that. But she's very clear that she doesn't concede the other counts. And she also says she asks for an acquittal and says in particular as to these two counts, but she doesn't concede guilt as to anything. And she certainly doesn't do what McCoy's counsel did of say he committed these crimes. I'm taking the burden off the prosecution. And that's really what McCoy's about is taking the burden off the prosecution. And that's not what happened here. She held the prosecutor to his burden. He made the fundamental objective choice. I want to hold the prosecution to their burden. I want to seek an acquittal at trial. And his attorney assisted him in that endeavor. Their objectives were aligned. So this isn't McCoy error. There may be some other problem with her conduct of the trial. But it's not McCoy error. It's not that fundamental structural error. Thank you, Counsel. Thank you. Thank you, Your Honors. To this idea that it's the same objective being an acquittal. This is that's precisely the argument that Reed and McCoy reject. I think under the state's definition, either Reed or McCoy would have gotten relief. Because in those cases, they're only conceding the actus reus. So in Judge Owen's example, that's McCoy. That's I want to avoid the stigma that comes with saying I killed my family. So under the state's definition, I think Reed and McCoy would have had to have come out differently. As far as the concessions, I think the state's problem is that the argument is just too technical. Reed looks at what was tantamount to a concession of guilt. Christian looks to what the jury would have understood counsel to be doing. McCoy suggests the same thing with the mental state quotes. And I think even the jury grappled with this because they send the question back about self-defense going. I think the logical conclusion being, well, this happened. I have counsel admitting to all this stuff, right? What do we do with this? I think the jury struggled with it. I believe it was Judge Wardlaw's question about arguing the voluntary intoxication as to the count for the negligent discharge. Below at 4 ER 671, the state concedes that, quote, sorry, Sperber, quote, argued voluntary intoxication solely as to the criminal threats count and the negligent discharge count. So I think they previously read it the same way that I read it, and I think that's correct. Even the concession that the state was mentioning, the quote that I'm not conceding anything, the quote is I'm not conceding anything else after she acknowledges that the threats and the negligent discharge had just happened. That normal sort of construction of statutory interpretation, that would mean you conceded those things, explicitly at least. And just finally to this idea that this is an IAC issue, it's not. It's about the fundamental disagreement. It's not about strategy, right? Reid and McCoy's defenses were absurd defenses. Reid was saying he was demonically possessed. Mr. McCoy was saying there was this wild FBI conspiracy theory. The point is that it doesn't matter what the defense was. I mean, Mr. Mason's defense, I think, was a perfectly good one, but it really doesn't matter what it is. The problem is the fundamental disagreement. And if the court has no other questions. No, thank you. Thank you. Mason versus McComber will be submitted, and I am not going to pronounce this correctly.
judges: WARDLAW, OWENS, ALBA